BRIAN J. STRETCH (CABN 163973)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

SHEILA A.G. ARMBRUST (CABN 265998)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6961
    FAX: (415) 436-7027
    sheila.armbrust@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 15-00003 VC |
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF SENTENCING MEMORANDUM |
| v. | |
| CHRISTOPHER LEE CARIGNAN, | Date: July 19, 2016<br>Time: 10:30 a.m.<br>Hon. Vince Chhabria |
| Defendant. | |

## I. INTRODUCTION

The defendant has a sharply different view of the facts of his case from that of the government and the Probation Officer. The Court now has the difficult task of fashioning a meaningful sentence that takes into consideration all of the factors set forth in 18 U.S.C. § 3553(a). The government recognizes that the defendant suffered from significant trauma in his childhood and in his recent past. Those are important factors for the Court to consider in sentencing.

But the Court also should consider the following, which the defendant does not acknowledge in his sentencing memo, but are facts set forth in the PSR: The defendant possessed the equivalent of thousands of images of child pornography; he password-protected his pornography and organized it on his computer; he fantasized about drugging and raping a three-year-old; he produced a pornography video

series and titled it in a way to suggest that it contained a child participant; and he possessed a distribution amount of methamphetamine, a highly-addictive and deadly drug, that he admits to having given to people who came to his home.  PSR ¶¶ 7, 8, 12, 15, 17, 18, 19.  He is not similarly situated to defendants in any of the cases identified in his sentencing memorandum (hereafter "Def. Memo").  The Court should consider the specific characteristics of this defendant, using the advisory Sentencing Guidelines U.S.S.G. §§ 2G2.2 and 2D1.1 as just one factor in evaluating the facts of this case.  Based on all the evidence available to the Court, the government, along with the Probation Office, submit that the unique facts of this case merit a sentence of 97 months of imprisonment.

### A. A Sentence of 36 Months in Custody is Insufficient Under 18 U.S.C. § 3553(a)

The defendant agrees that he should be sentenced to a term of imprisonment, but a sentence of 36 months is not long enough to achieve the goals of 18 U.S.C. § 3553(a).

To the extent that the Court questions the government's and the Probation Office's use of the Sentencing Guidelines as a benchmark for sentencing in this case: *United States v. Henderson*, 649 F.3d 955, 964 (9th Cir. 2011) does not state that U.S.S.G. § 2G2.2 should be given little to no weight.  The Ninth circuit emphasized that "we do not hold that application of § 2G2.2 will always result in an unreasonable sentence and that sentencing courts must continue to consider the applicable Guidelines range as 'the starting point and the initial benchmark.'" (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)).  The Ninth Circuit is equally clear that district courts must consider their "*Kimbrough* discretion to vary from the child pornography Guidelines based on a categorical policy disagreement with them." *Henderson*, 649 F.3d at 964.  In evaluating the appropriate sentence in this case, the government asks the Court to consider the nature and circumstances of the offense, the defendant's personal history, his relevant conduct, the interests of the many victims of his conduct, and the interest in protecting the community, and submits that a sentence of 36 months would not best balance those interests.

### B. The Defendant Minimizes His Offense Conduct and Relevant Conduct

The defendant invites the Court to draw a number of troubling and offensive conclusions based on his personal circumstances.  The Court should reject the defendant's efforts to justify his actions based on the argument that people who engage in a "lifestyle of drug use, frequent random sexual encounters, and trading in pornography" end up possessing child pornography.  Def. Memo at 1:4-5.

Being diagnosed with a serious medical condition does not make a person possess child pornography. Drug use does not make an individual possess child pornography. Possessing adult pornography does not make an individual possess child pornography. And trading pornography does not make an individual possess child pornography. Little can justify a person's decision to collect and organize thousands of videos depicting violence on children.

The defendant now tries to minimize his interest in child exploitation, but this cannot be squared with his admitted fantasy about drugging and raping a three-year-old boy. The defendant admitted to the Probation Officer that the fantasy about this boy and his brother were "part of a sexual fantasy with the partner that he was with at the time." PSR ¶ 17. It is this story, and the fear that the defendant was abusing children, that led FBI agents and officers to execute a warrant on his home. *See* PSR ¶¶ 7, 8, 12. The defendant also cannot now assert that he did not have an interest in child pornography, given that agents also found home-made pornography that included the defendant and a male of unknown age, which the defendant titled to include the words "15 yo boy." *Id.* ¶ 19. Moreover, as the Probation Officer reported based on her own review, she found thousands of videos of mostly-male child pornography on the defendant's computer, and the names of these videos made clear that they depicted violent material. *Id. ¶* 18. The defendant also asserts that, because of his background in hospitality, he wanted to have a "library of pornography" for the people who visited his home. Def. Memo at 14:3. He cannot be both a person who did not know what he received from the people who traded pornography with him and also a person who sought to ensure that he had pornography to suit all tastes, including child pornography. The Court thus should consider that, even at sentencing, the defendant is trying to minimize his culpability.

The defendant also seeks to minimize his offense conduct through the arguments of his counsel, not facts contained in the PSR or through objections to the PSR. He asserts, for the first time in his sentencing memorandum, that he kept files that "he had not yet viewed or sorted . . . in a holding folder" titled "still to be organized files," that "most" of the files that he possessed contained "adult pornography, but that [his files] also included some images depicting sexual encounters with children[,]" and that "he had not personally viewed all of the material nor did he know the nature of all of the pornography contained on his drive." Def. Memo at 3:7-19. The defendant did not provide this

GOVERNMENT'S REPLY ISO SENTENCING MEMORANDUM
CR 15-CR-00003 VC                                         3

information to the Probation Officer; these are not facts in the PSR; these are not facts provided in a signed statement by the defendant. Accordingly, this is not competent evidence for the Court to consider at sentencing.

### C. The Defendant Cites District Court Cases That Do Not Involve Drug Charges

The government has reviewed the sentencing memoranda and judgments for the cases cited by the defendant, not one of which involved possession of a distribution quantity of methamphetamine. *See* Def. Memo at 11:17-12:11. The government notes the following factually distinguishing points about these cases: In *United States v. Tri Minh Dao*, 13-cr-580 RMW, the government agreed to a below-guidelines sentence (ECF No. 72), and the defense sentencing memorandum explained that Mr. Dao committed the crime six years before his sentencing, had performed in an exemplary way on pretrial release, possessed images of mostly adolescent males, and that "[t]he case agent involved noted that Mr. Dao's case was one of the 'less serious in terms of the amount and type of images' that he has investigated[]" ECF No. 69 at 1:4, 1:6, 1:8-9. In *United States v. Patrick Young*, 13-cr-782 LHK, the defendant "possessed a small number of images which he traded with others." ECF No. 44 at 7:13. Furthermore, as the defense stated, "Mr. Young did not cultivate or organize a collection of child pornography, he did not encrypt or hide his child pornography, he merely deleted it out of shame and fear of being caught by his wife." *Id.* at 7:19-21. *United States v. Michael Slyter*, 13-cr-227 SI, involved a far-lower guidelines range, possession of 1,264 images, and no enhancement for sadistic or masochistic conduct. ECF No. 33 at 2:1, 2:24-27. Furthermore, as noted by the defendant, "as reported by the Probation Officer, who also reviewed the images (see *PSR*, Sentencing Recommendation) only 5% of the images possessed by Mr. Slyter involved active sexual activity depictions of adults with minors - a very small number of images (only 40-60 images)." ECF No. 34 at 16:4-7. In *United States v. John Vincent*, 15-cr-00196-CRB, government counsel is informed that, in advance of sentencing, Judge Breyer conducted a review of cases across the Ninth Circuit involving convictions for possession of child pornography, and found that the median sentence in those cases was 48 months.[1] However, in *Vincent*, the Court imposed a lower sentence where the defendant had successfully undertaken more

---

[1] The government has not obtained a transcript from the sentencing in this case. The defendant was represented by the Federal Public Defender's Office.

than a year of "significant rehabilitation through counseling and psychotherapy." *Id.* at ECF. No. 44 at 1:19-21.  Here, the defendant cannot point to similar rehabilitative conduct.  In fact, although the defendant was given the benefit of two stays in a residential treatment facility pretrial, he was terminated because of his "negative influence on other clients, his failure to use treatment effectively and displaying sexual behavior that is against the rules of the facility."  PSR ¶ 73.

### D. The Defendant is Not Entitled to a Motion for Acceptance of Responsibility Pursuant to U.S.S.G. § 3E1.1(b)

Defendants are not entitled to a government motion for an additional point reduction in the acceptance of responsibility, nor is this defendant entitled to a third point for acceptance where he does not meet the definition of the guidelines, in that "he did not assist authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty."  The government and the Court learned that the defendant would be pleading guilty at the appearance where he changed his plea, and the parties spent time on the record ensuring that the factual basis for his plea was sufficient because the government had not previously had an opportunity to review his open plea application.  *See* Dkt. No 55, 56.  Moreover, the parties had previously set this case for trial.  *See* Dkt. No 41.

The defendant has not asserted that the government has acted with improper motive in withholding the third point. Amendment 775 to the Sentencing Guidelines, which incorporates the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act" makes clear that "the government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial."  *See* U.S.S.G. § 3E1.1, App. Note 6 (incorporating PROTECT Act).  Moreover, the Ninth Circuit has held that the defendant must present "objective evidence of an improper motive on the part of the government" if it objects to the denial of the third point for acceptance of responsibility.  *United States v. Espinoza-Cano*, 456 F.3d 1126, 1138 (9th Cir. 2006) (specific holding overruled by the PROTECT Act); *see also United States v. Johnson*, 581 F.3d 994, 1001 (9th Cir. 2009) ("The burden of showing unconstitutional motive or arbitrariness [in refusal to file § 3E1.1(b) motion] rests on the defendant") (specific holding of

withholding third point based on decision to file appeal overruled by the PROTECT Act).[2]  Given the facts of this case, the government does not believe that a motion for an additional reduction in sentence pursuant to U.S.S.G. § 3E1.1(b) is appropriate.  The defendant has received a two-level reduction in his sentence, as agreed by all parties, pursuant to U.S.S.G. § 3E1.1(a).

### E.    The Defendant Provides The Court With Statistics That Support a Sentence Of More than 36 Months

The government concurs with the defendant that Courts impose below-Guidelines sentences in a large percentage of cases involving U.S.S.G. § 2G2.2.  It is not necessarily true, however, that "70% of sentences imposed were below the guidelines."  Def. Memo at 8:12.  In 2014 and 2015, there were 1612 and 1557 defendants, respectively, sentenced pursuant to U.S.S.G. § 2G2.2.  But notably, 347 defendants in 2014 and 336 defendants in 2015 were sentenced based upon some government-sponsored action, whether that was a plea agreement or motion pursuant to U.S.S.G. § 5K.  Thus, excluding those cases as ones where there was some agreement between the parties about a sentence, Courts sentenced defendants to a Guidelines sentence in 467 cases (36.9%) in 2014 and 442 cases (36.2%) in 2015.  There were below Guidelines sentences in 758 cases (59.9%) in 2014 and 754 cases (61.8%) in 2015.  A small number of courts also imposed above-Guidelines sentences.  *See* Fiscal Year 2015 U.S.S.G. Sourcebook of Federal Statistics, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/Table28.pdf and *See* Fiscal Year 2014 U.S.S.G. Sourcebook of Federal Statistics, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2014/Table28.pdf.

The statistics compiled by August Sommerfeld submitted in support of the defendant's sentencing memorandum also do not include defendants who have an offense level of 31, which is the offense level applicable in this case.  *See* Exhibits A and B to Declaration of August Sommerfeld (hereafter "Sommerfeld Decl.").  The declaration also does not identify what variables Mr. Sommerfeld and defense counsel determined "would best answer our research question," or what their research

---

[2] The government and the Probation Office recommend a sentence that is within the Guidelines for an offense Level 30 and CHC I.

question was.  *See* Sommerfeld Decl. at 1:27-2:1.  It is not clear whether these statistics include defendants who also possessed with intent to distribute drugs.  However, the exhibits show that the defendant's request for a 36-month term of imprisonment is not based on statistical analysis, as the *mean*, sentence for even a lower Offense Level would be 68.5 months (see Exhibit A, column for Offense Level 30), or 63.33 months (see Exhibit B, column for Offense Level 31).

### F.   The Government's Views on the Conditions of Supervised Release

Condition 1:  Undersigned counsel has conferred with other government attorneys, reviewed the judgments in the cases cited by the defendant, and reviewed her own case files involving child exploitation cases, and notes that a supervised release term of 5 years appears to be a standard.  However, the government defers to the recommendation of the Probation Officer, noting that the statute permits the Court to impose a life-term term of supervised release, and that the defendant would have the ability to petition the Court to reduce this term if he performs well on supervised release following his release from custody.

Condition 2:  The government does not see any indication that the defendant abused alcohol, but he abused drugs.  The government leaves it to the discretion of the Court and the Probation Officer to determine whether this is an appropriate condition of supervised release given the defendant's admitted history of drug abuse.

Condition 3:  The government notes that this condition requires the approval of the Probation Officer to acquire a computer, and it does not ban the defendant from possessing a computer.  The government believes that the Probation Officer should be afforded discretion to discuss computer usage with the defendant at the time of his release from custody.  This condition was imposed in *United States v. Tri Minh Dao*, 13-cr-580 RMW, *United States v. Patrick Young*, 13-cr-782 LHK, *United States v. Michael Slyter*, 13-cr-227 SI, and *United States v. John Vincent*, 15-cr-00196-CRB.

Condition 4:  This condition requires the defendant to enroll in the probation office's Computer and Internet Monitoring Program (CIMP).  Government counsel has not seen a copy of the CIMP "Acceptable Use Contract," and has requested a copy from the Probation Office so that it can evaluate the defendant's argument in advance of sentencing.  This exact condition was imposed in *United States v. Tri Minh Dao*, 13-cr-580 RMW, *United States v. Patrick Young*, 13-cr-782 LHK, and *United States v.*

*John Vincent*, 15-cr-00196-CRB.

Condition 5: This condition does not prohibit the defendant from accessing the internet, but requires him to obtain approval from the Probation Officer. The government believes that the Probation Officer should be afforded the discretion to discuss internet usage with the defendant at the time of his release from custody, particularly given that he admits to having engaged in risky sexual behavior with individuals whom he met on the internet. This condition was imposed in *United States v. Tri Minh Dao*, 13-cr-580 RMW, *United States v. Patrick Young*, 13-cr-782 LHK, *United States v. Michael Slyter*, 13-cr-227 SI, and *United States v. John Vincent*, 15-cr-00196-CRB.

Condition 6: This condition is the equivalent of an expanded search condition, but tailored to the fact that the defendant used his computer to possess child pornography. It is a standard condition that was imposed in *United States v. Tri Minh Dao*, 13-cr-580 RMW, *United States v. Patrick Young*, 13-cr-782 LHK, *United States v. Michael Slyter*, 13-cr-227 SI, and *United States v. John Vincent*, 15-cr-00196-CRB. The government does not believe, based on the specific circumstances in this case, that this is an unreasonably deprivation of the defendant's liberty.

Condition 9: The defendant possessed adult pornography and created pornography that he titled to include the age of a minor child. He also was terminated from New Bridge based on "displaying sexual behavior that is against the rules of the facility." PSR ¶ 73. The government believes that this condition, which does appear in the judgments for *United States v. John Vincent*, 15-cr-00196-CRB and *United States v. Patrick Young*, 13-cr-782 LHK, is appropriate given the specific conduct in this case and the concern that the defendant has admitted to engaging in risky sexual behavior with other adults. The government also notes that the Probation Officer can permit him to go to R rated movies or possess adult pornography at a point in time when it will not be harmful to him. The government also notes for the Court that the defendant's modification request appears in *United States v. Tri Minh Dao*, 13-cr-580 RMW and *United States v. Michael Slyter*, 13-cr-227 SI.

Condition 10: Like many conditions noted above, Condition 10 does not impose an absolute ban, but will allow for a conversation between the defendant and his Probation Officer when he is released from custody. The defendant cites *United States v. Collins*, 674 F.3d 873, 888-89 (9th Cir. 2012), which makes passing reference to a condition similar to Condition 10, but in fact discusses a

residency restriction in greatest detail, which is not applicable in this case. This condition was imposed in *United States v. Tri Minh Dao*, 13-cr-580 RMW, *United States v. Patrick Young*, 13-cr-782 LHK (although allowing the defendant to have contact with his daughter), and *United States v. John Vincent*, 15-cr-00196-CRB, and a similar condition was imposed in *United States v. Michael Slyter*, 13-cr-227 SI.

## II. CONCLUSION

Child pornography depicts violence against children. Those who produce it should be held most accountable. But the Court should not ignore the fact that, as the Supreme Court has stated, those who possess child pornography are complicit in child victimization, and "child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation.'" *Paroline v. United States*, 134 S.Ct. 1710 at 1716-17 (2014) (*quoting New York v. Ferber*, 458 U.S. 747, 759 (1982)). Given all of the factors set forth in 18 U.S.C. § 3553(a), the government concurs with the Probation Officer in concluding that a sentence of 97 months in custody is sufficient, but not greater than necessary, to achieve the goals of sentencing.

Dated: July 15, 2016                                      Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

By: _____/s/_____
SHEILA A.G. ARMBRUST
Assistant United States Attorney